IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01704-CMA-MEH

INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,

    Plaintiff,

v.

DRAHOTA DEVELOPMENT COMPANY, LLC,
PRECISE MASONRY, INC., d/b/a QM Company,
WESTCO FRAMERS, LLC,
LANDMARK CONSULTANTS, INC.,
NATIVE EXCAVATING, INC.,
JVAL, INC. d/b/a Rub-R-Wall Waterproofing,
TICO'S ROOFING, INC.,
BUILDER SERVICES GROUP, INC., d/b/a Thermal Concepts, and
TABER PLUMBING & HEATING, INC.,

    Defendants.
_____/

DRAHOTA DEVELOPMENT COMPANY, LLC,

    Third Party Plaintiff,

v.

PRECISE MASONRY, INC., d/b/a QM Company,
BUILDER SERVICES GROUP, INC., d/b/a Thermal Concepts,
WESTCO FRAMERS, LLC,
NATIVE EXCAVATING, INC.,
TICO'S ROOFING, INC.,
TABER PLUMBING & HEATING, INC., and
GRAND COUNTRY ROOFING AND SHEETING METAL, INC.,
d/b/a The Roofing Company,

    Third Party Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is the Motion to Dismiss (ECF 176) by Third Party Defendant, Tico's Roofing, Inc. The Motion is fully briefed. The Court finds that oral argument will not materially assist in its adjudication. For the reasons that follow, the Court respectfully recommends denying the Motion.

## BACKGROUND

For purposes of this ruling, the Court accepts as true the factual allegations—but not any legal conclusions, bare assertions, or conclusory allegations—from the operative pleadings. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (accepting as true a plaintiff's factual allegations for purposes of Fed. R. Civ. P. 12(b)(6) analysis). The pleadings consist of both the First Amended Complaint ("FAC") that Plaintiff, the Insurance Company of the State of Pennsylvania ("ICSOP"), filed (ECF 73) and the Third Party Complaint (ECF 156) by Drahota Development Company, LLC ("Drahota").

"Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir.2010). There are limited exceptions to this general rule by which a court may consider materials beyond the four corners of the complaint. *Id.* Two of those exceptions are: "(1) documents that the complaint incorporates by reference [and] (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id*. A court may consider such documents without converting a motion to dismiss into a motion for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (permitting a court to take judicial notice of facts that are a matters of public record). *See also N.E.L. v. Gildner*, 780 F. App'x 567, 571 (10th Cir. 2019). On that basis, the Court includes for consideration other public filings by Plaintiff ICSOP that are central to Tico's Roofing, Inc.'s Motion to Dismiss. This Court does so in order to better

2

understand both ICSOP's request for contribution from Drahota as well as Drahota's derivative claim of contribution against Tico's Roofing, Inc.

### I. The Construction Project and Resulting Arbitration

Underlying this lawsuit was a project to construct a commercial and residential development in Colorado (the "Project" or "property"). ECF 73 at ¶ 12. Construction began in September 2006 (*id*. at ¶ 13), and the Certificate of Occupancy was issued on August 22, 2008 (*id*. at ¶ 18), upon which a homeowner's association ("HOA") became responsible for the property (*id*. at ¶ 19).

Awareness "of potential construction defects resulting in water intrusion in condominium units and common areas of the Project" occurred "[a]s early as May 2011." *Id*. at ¶ 27. The property was inspected, and a report dated June 3, 2011 identified several construction defects. *Id*. at ¶ 28. Drahota, the general contractor on the Project, was rehired in November 2011, this time to make repairs. *Id*. at ¶ 29. On September 10, 2019, the HOA sent a Notice of Claim to Drahota about additional construction defects. *Id*. at ¶ 31.

On March 30, 2020, the HOA demanded arbitration to resolve the construction defect dispute. The HOA brought the arbitration proceeding against various construction professionals (the "Arbitration Respondents") who were the Project's developers. *Id*. at ¶ 34. ICSOP was the Arbitration Respondents' excess liability insurer. *Id*. at ¶ 40.

The parties to the arbitration settled the construction defect claims (*id*. at ¶ 49) which ICSOP partially funded the settlement (*id*. at ¶ 47). In return, the HOA fully released "the Arbitration Respondents and all construction professionals, as defined in C.R.S. § 13-20-802.5(4), who worked on the Project from January 1, 2008 through December 31, 2014." *Id*. at ¶ 48. The proceeding concerned negligent construction work which the HOA attributed to Drahota (*id*. at ¶ 50), and the settlement agreement specifically identified Drahota as a released party (*id*. at ¶ 48).

3

In its FAC, ICSOP nevertheless does not identify Drahota as one of the named Arbitration Respondents. Drahota denies being a party to the arbitration or having any contemporaneous knowledge of the settlement agreement. ECF 179 at 2.

The arbitration settlement agreement is confidential. The scope of its confidentiality provision is broad, covering not only the settlement amount but also the identity of both the property and the developers against whom the construction defect claims were asserted. ECF 11 at ¶ 6. Given the arbitration parties' negotiated confidentiality, this Court cites only from the redacted versions of the FAC and Third Party Complaint.

Neither ICSOP nor Drahota reveals the date of the arbitration settlement in their respective complaints. Nor do they say in the briefing of the instant Motion to Dismiss when it occurred despite that date being a material point. However, in an unrelated filing ICSOP does state the agreement's date. Because Tico's Roofing, Inc. suggests in its Motion that the settlement agreement's signing date falls within the scope of the confidentiality provision (ECF 176 at n.2), this Court errs on the side of caution, and it does not repeat that date here.

**II.    ICSOP Seeks Contribution**

ICSOP commenced this civil action on June 21, 2021. ECF 12. It complains about paying "more than its pro rata share to settle the Arbitration and obtain releases for liability for both the Arbitration claims and the Released claims." ECF 73 at ¶ 53. As causes of action by which to obtain Drahota's contribution, ICSOP asserts claims of statutory contribution, unjust enrichment, and equitable contribution. ICSOP also seeks a contribution by way of indemnification-based claims. ICSOP alleges that the contract by which Drahota was hired as the Project's general contractor obliges Drahota to indemnify it, and ISCOP furthers that Drahota failed to buy indemnifying insurance.

4

Drahota denies the construction defect allegations upon which ICSOP's contribution and indemnification-based theories rest. ECF 156 at ¶ 18. It counters that ICSOP therefore "fails to state a claim against [it] upon which relief may be granted." ECF 87 at 14, ¶ 1. Drahota also asserts as an affirmative defense the "applicable statutes of limitations or repose." *Id*. at 14, ¶ 2.

### III.   Drahota Seeks Contribution from its Sub-Contractors

Drahota in turn brings its own claims against various third party sub-contractors who had worked on the Project. It filed the initial iterations of its Third Party Complaint on June 13, 2022 (ECF 66) and June 14, 2022 (ECF 67). Later, on August 31, 2022, Drahota filed a redacted version of its Third Party Complaint at ECF 156, to which this Court cites.

In its Answer to ICSOP's FAC, Drahota denies any negligent construction. However, to the extent ICSOP can prove "its allegations of defective construction and/or design," Drahota holds the Third Party Defendants, "as the entities who performed the allegedly defective work," as the ones who should be "liable for the damages of [ICSOP] and Drahota which result from that work." *Id*. at ¶ 19. The Third Party Defendants are the "various trade subcontractors and design professionals [whom Drahota retained] to perform construction work at the Project." *Id*. at ¶ 20. Similar to ICSOP's theory of relief against it, Drahota asserts multiple causes of action through which it seeks contribution and indemnification from them. Tico's Roofing, Inc. is one of the named Third Party Defendants, against whom Drahota repeats in its Third Party Complaint the same defects that ICSOP attributes to Tico's Roofing, Inc. in its FAC.  *Id*. at ¶ 27. In other words, Drahota's claims against Tico's Roofing, Inc. are derivative of ICSOP's claims against it.

### **LEGAL STANDARD**

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of a plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual

5

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. *Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Iqbal*, 556 U.S. at 679–80. Second, a court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, then the claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"

*Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## ANALYSIS

Tico's Roofing, Inc. objects to Drahota's claims as untimely. Colo. Rev. Stat. § 13-80-104 provides the governing standard for construction litigation, including construction-related derivative claims. *Richmond Am. Homes of Colo., Inc. v. Steel Floors, LLC*, 187 P.3d 1199 (Colo. App. 2008) (discussing Colorado's Construction Defect Action Reform Act).

**I.    Statute of Limitations**

A property owner has two years within which to sue a construction professional. Colo. Rev. Stat. §§ 13-80-102 and 13-80-104. This two-year period of time begins to run when "the claim for relief arises," Colo. Rev. Stat. § 13-80-104(1)(a), which occurs when the property owner discovers or should have discovered the construction defect, *Richmond*, 187 P.3d at 1204. Tico's Roofing, Inc. argues that the very latest date when Drahota's negligence and breach of contract claims could have accrued for Colo. Rev. Stat. § 13-80-102(1) purposes was November 2011. That was when Drahota was hired to repair the property. However, Drahota did not sue Tico's Roofing, Inc. until June 2022, well after the general two-year statute of limitations had run. Tico's Roofing, Inc. furthers that the six-year repose period that Colo. Rev. Stat. §§ 13-80-104(1)(a) and (b)(I) create serves as another bar to Drahota's ability to sue it.

Drahota counters that the operative pleadings leave too vague when it knew or should have known of a defect in Tico's Roofing, Inc.'s work or indeed whether the arbitration proceeding

fully covered the alleged defects in Tico's Roofing, Inc.'s work. As Tico's Roofing, Inc. stresses in its Reply, Drahota's reliance on the pleadings' vagueness to defend itself against the statute-of-limitations argument raises the question of whether Drahota pleads a plausible claim for relief in the first place.

This Court leaves for later determination the plausibility of Drahota's claims for relief. Moreover, this Court accepts for present purposes Tico's Roofing, Inc.'s use of November 2011 as the latest possible accrual date. Even if the claims did accrue in November 2011, the tolling effect of Colo. Rev. Stat. § 13-80-104(1)(b)(II) means that the statutes of limitations and repose periods that Colo. Rev. Stat. § 13-80-104(1)(a) contains do not apply.

## II.     Tolling of Derivative Claims

The purpose of Colo. Rev. Stat. § 13-80-104(1)(b)(II)'s tolling provision, the Colorado Supreme Court explained in *CLPF-Parkridge One, L.P. v. Harwell Invs., Inc.*, 105 P.3d 658, 664-65 (Colo. 2005), is to streamline construction defect litigation by giving the construction professional whom the property owner names in the lawsuit time to determine which of its sub-contractors should share in the liability. That provision gives the construction professional defendant (such as the general contractor) ninety days after the plaintiff (property owner)'s construction defect claim is resolved by settlement or final judgment to bring its own claims of tort, contract, indemnity, or contribution against third party construction professionals. *Richmond*, 187 P.3d at 1206.

Drahota is the defendant to ICSOP's construction defect lawsuit. Colorado law therefore gives Drahota the option either to bring its third party claims against Tico's Roofing, Inc. now as part of this lawsuit,[1] *Goodman v. Heritage Builders, Inc.*, 390 P.3d 398, 402 (Colo. 2017), or to

---

[1] This Court does not regard the underlying arbitration as the original construction defect proceeding (which ended in settlement) by which the ninety-day tolling period for Drahota's

wait ninety days after its resolution. Presumably, Drahota believes that pursuing its third party claims now is the overall more efficient means to litigate them. It follows that Drahota does not bring its claims against Tico's Roofing, Inc. too late. To the contrary, the ninety day extension of the statute of limitations period has not even started.

### III.   Timeliness of ICSOP's Claims Against Drahota

Tico's Roofing, Inc. brings a statute of limitations argument that is itself derivative in nature. It argues that Drahota's claims against it are untimely because ICSOP's claims *against Drahota* are untimely. Tico's Roofing, Inc. notes how Drahota itself asserts untimeliness as an affirmative defense. It is Drahota's burden of persuasion to establish the defense, and as such, this Court leaves the merits of that determination for such time when Drahota pursues the argument on its own behalf. For present purposes, it suffices to note that the record supports as a reasonable assumption that ICSOP commenced this civil action within the ninety-day tolling period of Colo. Rev. Stat. § 13-80-104(1)(b)(II).

### IV.   Equal Protection Clause

Lastly, Tico's Roofing, Inc. contends that giving Drahota the benefit of Colo. Rev. Stat. § 13-80-104(1)(b)(II) results in a violation of the U.S. Constitution's Equal Protection Clause. Tico's Roofing, Inc. objects to the way in which the tolling provision treats "general contractors differently and offers them greater protections than subcontractors for no reason that would pass constitutional muster." ECF 176 at 11. Tico's Roofing, Inc. provides no substantive legal argument to support its theory. Nor does the above-cited Colorado case law suggest that the statute improperly favors one type of entity (general contractors) over another (sub-contractors). To the

---

claims against Tico's Roofing, Inc. should be measured. Because Drahota presumably had no knowledge of the arbitration proceeding and in light of the reasons for the tolling provision as explained by *CLPF*, 105 P.3d at 664-65, Drahota's Third Party Complaint benefits from it as well.

9

contrary, the provision means that the general contractor defendant need not bring third party claims against *all* the sub-contractors on the project, thereby keeping litigation streamlined to those who "truly" could share in liability. *CLPF*, 105 P.3d at 664. Nor in a practical sense does the provision give Drahota an advantage over Tico's Roofing, Inc.; both entities are equally subject of the same construction defect claims.

## CONCLUSION

Many years passed between the construction project (which Tico's Roofing, Inc. says was substantially completed in August 2008) and the filing of Drahota's Third Party Complaint in June 2022. That span of time naturally raises timeliness concerns. However, given the complicated history of how the Project's alleged construction defects were pursued, they remain timely under Colorado law in their derivative form. Accordingly, the Court recommends[2] that Tico's Roofing, Inc.'s Motion to Dismiss [filed October 10, 2022; ECF 176] be **denied**.

---

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.

Respectfully submitted this 12th day of January, 2023, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge